### IN RE ESTATE OF CHARLES EMERSON.

**APPEAL AND ERROR:** Harmless Error—Prevailing Party. A prevailing party may not predicate error on the introduction against him of incompetent and immaterial testimony.

**JUDGMENT:** Recitals. It is not error for the court to preface an order for the allowance of a claim for services in probate with a recital (1) of personal knowledge of the matter of said claim and (2) of personal knowledge of the ability of claimant.

*Appeal from Union District Court.*—H. K. EVANS, Judge.

### OCTOBER 16, 1923.

IN the district court, this was a special proceeding in probate, wherein objections were filed to the final report of the administrator. A trial was had upon the merits, which resulted in an order sustaining the objections in part and overruling the same in part. From this order both parties appealed, the objector first perfecting his appeal. In submitting the case in this court, the administrator has elected to waive his appeal.—*Affirmed.*

*Winter & Davenport,* for appellant.

*L. J. Camp,* for appellee.

EVANS, J.—The objector is the administrator of the estate of Roy Emerson, deceased, who was a beneficiary of the estate of Charles Emerson. His specific objection to the final report of the administrator of the Charles Emerson estate was directed to two items of $200 and of $1,170, respectively. These items represent claims of the administrator for extra compensation for extraordinary services, in addition to his statutory compensation. They had previously been allowed by interlocutory orders. The administrator pleaded such interlocutory orders as prior adjudications. The trial court disallowed the item of $200, and reduced the item of $1,170 to the sum of $520. The con-

tention for the appellant is that this latter item should have been wholly disallowed, and this is the question presented for our consideration.

Boyer, the administrator, was appointed as such in February, 1919. The estate comprised assets amounting to $37,000. It consisted of real estate, a stock of goods used in the undertaking business, book accounts, and cash in bank. The extraordinary services claimed for consisted of an alleged auditing of the books of the business, covering a period of several years. It was contended for the administrator that, because of the confused and incomplete condition of the books, this course was necessary for the protection of the estate. On the other hand, it is contended by appellant that this alleged necessity was purely imaginary, and that it was a mere camouflage, resorted to for the purpose of furnishing a basis for extra compensation.

Needless to say that the case is not triable before us *de novo*. The finding of the trial court is quite conclusive on the questions of fact. This means that it was peculiarly within the province of the trial court to determine whether the services claimed for were reasonably necessary or proper in the interest of the estate, and if of doubtful advantage, whether the administrator acted in good faith in the performance of the same. It was likewise his province to determine the reasonable value of such extraordinary services as were reasonably performed by the administrator.

The appeal is predicated upon three specific assignments of error. Two of these challenge the admissibility of the testimony of Judge Fuller as a witness; likewise, the testimony of the administrator concerning alleged directions given to him orally by Judge Fuller while he was not sitting as a judge. The other assignment of error is directed against a statement by the trial judge incorporated in his finding of facts, to the effect that:

"Having heard all of the evidence and being thoroughly familiar with the situation and having personal knowledge of and acquaintance with the ability of Mr. Boyer as administrator."

I. Judge Fuller was one of the district judges for Union County. As such, he appointed this administrator. As such, also, he entered the interlocutory orders allowing the adminis-

1. APPEAL AND ERROR: harmless error: prevailing party.

trator the two items of extra compensation in dispute. He testified as follows, over appropriate objections by the objector:

"I recall the time when the matter of the estate of Chas. Emerson, when an application was made by R. E. Boyer, administrator with will annexed, for the allowance of certain fees claimed to be due for extra services in connection with that estate.  Q.  Had you any knowledge, prior to the time of this application, that those services had been·rendered by Mr. Boyer? A.  Yes, sir, I think I had knowledge that they were to be rendered before they were rendered.  Prior to the rendering of the services, I had a conversation with Mr. Boyer, or his attorney, Thomas L. Maxwell, with reference to the auditing of the books in the Emerson estate.  Q.  State the facts with reference to that.  A.  If my memory is correct, I think I came into town the day after Mrs. Emerson had been found dead, and shortly after that, the matter was brought to my attention of the appointment of the administrator with the will annexed, to succeed Mrs. Emerson.  Judge Maxwell was acting as attorney for the Emerson estate, and conferred with me about the appointment of a successor to Mrs. Emerson, and various matters in connection with the estate; and the outcome of the matter was that Mr. Boyer was recommended as the person to take charge of the estate, that would be proper for all of the interested parties.  I think I made the appointment of Mr. Boyer as administrator.  Q.  In that conversation, was anything said about the matter of auditing the books and accounts in connection with the estate?  A.  Yes, sir; Mr. Boyer said that he understood in a general way the situation regarding this estate and the obligations there would be in connection with the duties of administrator, and he said he wouldn't serve for the ordinary compensation.  I think this was prior to the time of his appointment. I am not clear on that, however, as to the exact time.  If it was not prior to the time of his appointment, it was the same evening after he had been appointed,—I think at Judge Maxwell's office in Creston.  I think I had the meeting there at that time. Q.  And did Mr. Boyer at that time make any statement as to whether he would serve unless extra·compensation was tendered him?  A.  He said he wouldn't do the work of auditing the

books and run down the various matters in connection with the claims of the estate unless he was paid the fees as an accountant, and it was understood by Judge Maxwell and myself that he was to be paid that kind of compensation, in addition to his fees as administrator. There was a hearing in this court upon the petition for the allowance of the claim before me. Evidence was taken with reference to the claim. Mr. Boyer was sworn as a witness, and testified as to the claim. I will state that, in connection with this matter at the time it was presented here in court by Judge Maxwell, I mentioned the amount of the allowance, and Judge Maxwell, as an attorney, assured me that he had personal knowledge of the services that had been rendered, and recommended allowance of it, in addition to the evidence that was given by Mr. Boyer, as I remember the transaction.''

This is the objectionable evidence complained of. The evidence was at least *relevant* to the issue of prior adjudication. Assuming, however, that it was neither *competent* nor *material*, it was yet clearly nonprejudicial, if for no other reason than that the trial court found *against* the administrator on this issue, and rejected the items accordingly.

Moreover, the evidence had a proper bearing on the question of the good faith of the administrator, both in rendering the extra services and in charging therefor. This was a proper inquiry by the trial court, even though not a controlling one. We hold, therefore, that the evidence complained of was without prejudice.

II. It only remains to consider the complaint of appellant which is directed to the expression of personal knowledge in-- corporated in the decree by the trial court. We discern no fair ground of complaint. That the judge should

2. JUDGMENT: recitals.

say that he was ''thoroughly familiar with the situation'' was something of a platitude, and expressed nothing more than would be presumed in favor of the decree. Nor does the further statement that he had ''personal knowledge of and acquaintance with the *ability* of Mr. Boyer as an administrator'' go much further than the first statement. The administration of this estate had been pending for years in such court. Successive orders were made therein at different terms. It is fairly within the range of the duty of the sitting

judges to have a personal knowledge, as far as practicable, of the ability and character of the administrators who administer the trusts committed to them, and whose acts are successively presented to the consideration of the court for approval. In this case, the court was rejecting the two items in dispute and disregarding the interlocutory orders which had approved them. The language complained of indicated that such disapproval was not on the ground of inefficiency on the part of the administrator, but on the ground that the allowances were excessive. The concession was quite unnecessary, and might well have been withheld from the decree. The ''personal knowledge'' of the ability of the administrator as such was necessarily acquired, to some degree, at least, in a consideration of his work in the instant case. However acquired, it would not disqualify the judge from hearing and deciding the controversy. Neither the fact that ''personal knowledge'' existed nor that its existence was incorporated into the decree could work any possible prejudice to the appellant.

For the reasons indicated, the order entered below is, accordingly, affirmed.—*Affirmed.*

PRESTON, C. J., ARTHUR and FAVILLE, JJ., concur.